1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LORENZO CARL PAYNES,

11          Plaintiff,                    No. CIV S-04-1868 MCE KJM P

12      vs.

13   D.L. RUNNELS, et al.,

14          Defendants.              FINDINGS & RECOMMENDATIONS

15   _____/

16          Plaintiff is a state prison inmate proceeding pro se with a civil rights action under

17   42 U.S.C. § 1983.  In general, he alleges that he is a pre-operative transsexual and that the

18   defendants have failed to protect him and to provide appropriate housing for him.  He also

19   alleges that the defendants have colluded to hide staff misconduct.

20          Specifically, he alleges that on March 29, 2003, he was assaulted in his cell by

21   another inmate.  Defendant Tuffin was in charge of the controls to open and close the cell doors.

22   Amended Complaint (Am. Compl.) ¶ 18.  Plaintiff says he submitted a grievance about Tuffin's

23   action on May 9, 2003, but withdrew it on May 25, 2003, after Lieutenant Myers offered to have

24   him transferred if he did so.  Id. ¶ 25.  He then told M. McDonald, the chairman of the

25   classification committee, that he had withdrawn his complaint against Tuffin because of the

26   promise he would be transferred.  Id. ¶ 27.  Despite the fact that he withdrew his staff misconduct

                                         1

1    complaint, he wrote to the Director of the California Department of Corrections and

2    Rehabilitation (CDCR) about the incident and received a letter from defendant Runnels' office in

3    response to his attempts to bring Tuffin's misconduct to the attention of CDCR officials.  Id. ¶¶

4    30-34.

5            Plaintiff also recounts his attempts to be classified in a manner that would

6    facilitate his transfer from High Desert State Prison (HDSP) to California Mens' Colony, where

7    he was previously housed and where he feels safe.  Id. ¶¶ 35, 37.  He alleges he was told he

8    would be transferred after his misconduct complaint against defendant Tuffin was resolved, but

9    has instead been released from Administrative Segregation to general population, in derogation

10    of his safety.  Id. ¶¶ 44, 46.

11            Defendants have filed a motion to dismiss the complaint, arguing that plaintiff has

12    failed to exhaust his administrative remedies and that the complaint fails to state a claim as to

13    defendants Runnels and Felker.

14    II.  Failure To Exhaust

15       A.  Exhaustion Standards Under The Prison Litigation Reform Act (PLRA)

16            The PLRA provides that "no action shall be brought with respect to prison

17    conditions under section 1983 of this title, . . . until such administrative remedies as are available

18    are exhausted."  42 U.S.C. § 1997e(a).  "Conditions of confinement" subject to exhaustion have

19    been defined broadly as "the effects of actions by government officials on the lives of persons

20    confined in prisons."  18 U.S.C. § 3626(g)(2); Smith v. Zachary, 255 F.3d 446, 449 (7th Cir.

21    2001); see also Lawrence v. Goord, 304 F.3d 198, 200 (2d Cir. 2002).  Proper exhaustion of

22    available remedies is mandatory.  Booth v. Churner, 532 U.S. 731, 741 (2001); Woodford v.

23    Ngo, 548 U.S. 81, 126 S. Ct. 2378 (2006) (addressing timeliness aspect of proper exhaustion).

24    The grievance process must be completed before the inmate files suit; exhaustion during the

25    pendency of the litigation will not save an action from dismissal.  McKinney v. Carey, 311 F.3d

26    1198, 1200 (9th Cir. 2002).

1      California prison regulations provide administrative procedures in the form of one

2   informal and three formal levels of review to address an inmate's claims.  See 15 Cal. Code

3   Regs. §§ 3084.1-3084.7.  An initial grievance must be filed within fifteen working days of the

4   challenged act or omission.  15 Cal. Code Regs. § 3084.6(c)(6).  Administrative procedures

5   generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level

6   review, with respect to his issues or claims.  15 Cal. Code Regs. § 3084.5.

7      Finally, to satisfy the exhaustion requirement, a grievance must alert prison

8   officials to the claims the plaintiff has included in the complaint.  Porter v. Nussle, 534 U.S. 516,

9   524-25 (2002) (purpose of exhaustion requirement is to give officials "time and opportunity to

10  address complaints internally before allowing the initiation of a federal case"); Brown v. Sikes,

11  212 F.3d 1205, 1209 (11th Cir. 2000) (1997e(a) requires that a prisoner provide as much relevant

12  information as he reasonably can in the administrative grievance process).

13      A motion to dismiss for failure to exhaust administrative remedies prior to filing

14  suit arises under Rule 12(b) of the Federal Rules of Civil Procedure.  Wyatt v. Terhune, 315 F.3d

15  1108, 1119 (9th Cir.), cert. denied sub nom. Alameida v. Wyatt, 540 U.S. 810 (2003).  In

16  deciding a motion to dismiss for a failure to exhaust non-judicial remedies, the court may look

17  beyond the pleadings and decide disputed issues of fact.  Id. at 1119-20.  Defendants bear the

18  burden of proving plaintiff's failure to exhaust.  Id. at 1119.

19      B.  Analysis

20      Defendants have submitted the declarations of M. Dangler, Appeals Coordinator

21  at High Desert State Prison, where the challenged acts and omissions occurred, and N. Grannis,

22  the chief of the Inmate Appeals Branch.  Dangler avers that he conducted a search of plaintiff's

23  appeals file and concluded that it contains no appeal exhausted through the second level between

24  March 29, 2003 and May 23, 2005 about an assault in plaintiff's cell, his concerns with his

25  placement at HDSP, or a conspiracy by staff members to cover up his complaint against

26  defendant Tuffin.  Declaration of M. Dangler (Dangler Decl.) ¶ 13.

1    Grannis avers that the Inmate Appeals Branch (IAB) has not accepted a Director's

2  Level appeal from plaintiff regarding an assault in his cell, the propriety of housing him at HDSP

3  or a conspiracy to cover up the assault on him.  Amended Declaration of N. Grannis (Am.

4  Grannis Decl.) ¶ 12.  She has provided a printout from IAB, showing those of plaintiff's

5  grievances either adjudicated at the Director's Level or screened out for untimeliness,

6  incompleteness or other reasons.  Am. Grannis Decl., Ex. A.  The printout shows that one

7  medical grievance, 03-359, was adjudicated at the Director's Level in 2003.  Id.

8    Plaintiff has provided copies of various grievances and officials' responses as

9  exhibits to his complaint and to his opposition to the motion to dismiss.

10    1.  Factual Background

11    On February 4, 2003, plaintiff filed a grievance or "602," Log No. 03-359,

12  asserting he should not be housed at HDSP because there are no groups for transgender inmates,

13  he has difficulty talking to the doctor about the hormones he is taking, and the regulations

14  provide that transgender inmates may require special placement.  Am. Compl., Ex. A at 27.[1]

15  Plaintiff appealed the first level denial, adding that his "safety concerns are a factor as well as

16  medical issues" and that he had been assaulted for refusing a demand for sex.  Id., Ex. A at 31.

17  On May 2, 2003, the appeal was denied at the second level:

18         Your request for a transfer has been reviewed; it has been
           determined that you do not meet the guidelines for a medical
19         transfer. . . . [I]f you required a medical treatment that is not
           available at HDSP, then a transfer would be arranged . . . . A
20         review of your health record indicates that you are receiving
           hormone therapy . . . .  Additionally, you have been referred to
21         Mental Health.  This indicates that HDSP is able to provide
           treatment for your transgender condition, so a transfer is not
22         indicated.

23  /////

24  /////

25

26    [1]  The court refers to the page numbers assigned by the CM/ECF system.

4

1
2
3

Inmate Paynes, in this appeal you stated that you have received threats and sexual requests so you fear for your life. This appears to be a custody issue. You need to talk to your Correctional Counselor regarding a transfer to a facility that clusters transgender inmates.

4
5

Based on this information, your appeal request for a medical transfer to CMC-E is denied.

6  Am. Compl., Ex. A at 29-30.

7      In the portion of the 602 form for appealing to the Director's Level, plaintiff

8  wrote that he was dissatisfied with the Second Level response:

9
10
11

This appeal is more than a medical concern. I was attacked 4-8-03 on D-Yard at H.D.S.P. inmate came in my cell and asked me for sex and then attacked me after I said no. I was then placed in Ad-Seg for enemy concerns from 1D-3-204L and released to C yard.

12  Id., Ex. A at 28. At the bottom, the form contains the notation that the appeal was denied at the

13  Director's Level on August 6, 2003. Id. The denial reads, in pertinent part, "The Second Level

14  Review determined there was no medical necessity to transfer the appellant to the CMC as he

15  was receiving appropriate care for his transgender condition at HDSP." Opposition to Motion To

16  Dismiss (Opp'n), Ex. A at 12.

17      After the assault and plaintiff's placement in Administrative Segregation on April

18  18, 2003, plaintiff filed a grievance, assigned Log No. 03-1024, in which he complains the

19  assault was made possible because defendant Tuffin opened his cell door. Am. Compl., Ex. E at

20  39. On May 25, 2003, plaintiff agreed to withdraw this appeal. Id., Ex. E at 40. On the same

21  day, plaintiff signed a "Rights and Responsibility Form" in connection with the filing of a staff

22  complaint. Id., Ex. E at 42. However, on August 7, 2003, plaintiff wrote on the 602 form that he

23  was put in Ad Seg because of his complaint of staff misconduct, but questioned how there could

24  be an investigation if he had withdrawn his grievance. Id., Ex. E at 40; see also Am. Compl.,

25
26

1    Ex. F at 1[2] (ad seg placement notice dated 7/28/03).  A First Level response dated July 15, 2003

2    notes that plaintiff had withdrawn the appeal because "in talking with Officer Tuffin . . . you feel

3    that there was no malicious intent on his behalf."  Am. Compl., Ex. H at 5.  In a memorandum to

4    defendant Tuffin, dated June 17, 2003, defendant Felker wrote:

5              The fact-finding review of the Staff Complaint, Appeal Log # C-
               03-1024, submitted by Inmate Paynes, CDC # H-77477, has been
6              completed.

7              Based on the fact-finding review of this inmate appeal, it has been
               determined that the allegations of staff misconduct resulted in no
8              findings.  Inmate Payne [sic] has chosen to withdraw this appeal.
               The results of this finding have been communicated to inmate
9              Payne.

10    Am. Compl., Ex. I at 7.

11             It appears plaintiff was released from Administrative Segregation some time after

12    the June 17th  memorandum was issued, but was again placed in segregation on July 28, 2003

13    because he had "been identified as a witness to an investigation in which serious staff

14    misconduct has been alleged" and his placement was necessary "to preserve the integrity of this

15    investigation."  Am. Compl., Ex. E at 41.  He apparently filed a grievance, but it was screened

16    out as untimely: the appeals screening form dated August 21, 2003 indicates that the fifteen day

17    limit for submitting a grievance had been exceeded: "114-D dated 7/28/03 and did not submit an

18    appeal until 8/19/03."  Am. Compl., Ex. U at 6.

19             Plaintiff prepared another grievance on September 23, 2003, for which no log

20    number is apparent, although a "received" stamp appears at the bottom of the page.  This

21    grievance notes plaintiff  had requested "appropriate housing" through the grievance system and

22    through letters to CDCR officials.  He also mentioned the assault and attempted sexual assault.

23    He requests that the policy for housing transgender inmates be reviewed.  Opp'n, Ex. G at 25-26.

24    On the same day, he submitted another grievance, which also does not bear a log number,

25

26        [2]  The complaint and its attachments were scanned in groups, so the page numbers for the
      exhibits begin again with each group.

1   complaining that he dropped his staff complaint against defendant Tuffin on the understanding he

2   would be transferred, but he was then returned to segregation.  See Opp'n., Ex. G at 27.  An

3   Appeals Screening Form dated September 25, 2003 said the grievance was untimely because he

4   was placed in segregation on July 27, 2003.  Opp'n, Ex. G at 24.

5          Plaintiff did not confine himself to the grievance system, but also wrote letters to

6   prison officials about a number of topics and filed a claim with the Victims' Compensation

7   Board.  In a letter dated November 25, 2003, the Board notified plaintiff that his claim arising

8   from the assault would be rejected on December 19, 2003.  Opp'n, Ex. D at 18.

9          In a letter dated November 25, 2003, defendant Runnels responded to a letter

10  plaintiff sent to the Director of Corrections.  He observed that "HDSP is currently conducting an

11  Internal Affairs Investigation (IAI) into your allegations.  That IAI, Log # I-HDSP-058-2003 is

12  due for completion on 12/ 21/ 03."  Am. Compl., Ex. K at 11; see also id., Ex. L at 13.  The

13  subject of the underlying staff complaint is not described.

14         On February 25, 2004, plaintiff filed the following grievance, assigned Log No.

15  04-516:

16         On 12-11-03 the above appellant appeared before H.D.S.P. I.C.C.
           commite [sic] after being placed in Ad/Seg for staff misconduct.
17         The Appellant expressed that after being assaulted and attempted
           sexual assault, that being housed at High Desert State Prison was
18         jeopardizing his safety.  I.C.C. stated after the completion of the
           investigation of staff misconduct the appellant would be
19         transferred, on the contrary after the completion the Appellant was
           placed back in general population at H.D.S.P. on 12–11-03.  Staff
20         official at H.D.S.P. are egnoring [sic] the need to house the
           Appellant with appropriate housing after a correctional officer
21         open the Appellant's cell door which allowed the Appellant to be
           assaulted.  The Appellant is a transgender inmate . . . that has
22         expressed on numerous occasions that he had received sexual
           demands being housed at H.D.S.P.

23

24

25

26

1
2
3
                After being released from segregation, the appellant had received
threats from two different cell mates on the day of his release from
segregation.  Prison officials at High Desert State Prison are not in
compliance with C.D.C. S Title 15 Calif. Admin. Code section
3375.2(a)(19)(23) and the U.S. Constitution. . . .

4   Am. Compl., Ex. N at 17, 21.  Plaintiff received a Second Level response on April 15, 2004.  Id.,

5   Ex. N at 19-20.  At the bottom right hand corner of the 602 form, there is a stamp, "Received

6   April 26, 2004 Inmate Appeals Branch."   Another stamp, below the first, reads "Exceeded 15

7   Day Time Limit."  A hand written notation reads: "Appeal Rejected by 3rd Level Memo Dated

8   6/7/04." Id., Ex. N at 17.  The June 2004  memo says that Log No. 04-516 was being returned to

9   plaintiff because it was not submitted "within 15 working days of the event or decision being

10  appealed, or of receiving a lower level decision."  Id., Ex. R at 32; Grannis Am. Decl., Ex. A at

11  7.

12                  2.   Exhaustion With Respect to Specific Claims

13                  a.   Conspiracy To Cover Up Staff Misconduct

14          None of plaintiff's grievances addressed this segment of the complaint;

15  defendants' motion as to this ground is well taken.

16                  b.   The Assault

17          Plaintiff filed a number of grievances complaining about the assault and about the

18  propriety of housing him at HDSP.  Most were screened out, at one level or another, as untimely.

19  See, e.g., Opp'n, Ex. G at 24, 25, 27; Am. Compl., Ex. N at 17, 21 & Ex. R at 32.  Plaintiff did,

20  however, file a timely grievance, Log No. 03-1024, in which he described the assault and named

21  defendant Tuffin as the officer responsible for opening his cell door.  See Am. Compl., Ex. E at

22  39.  Plaintiff never received a Director's Level adjudication of this grievance because he

23  withdrew it on May 25, 2003.  Id., Ex. E at 40.   In his amended complaint, submitted under

24  penalty of perjury, plaintiff avers he withdrew the grievance only because Lieutenant Myers, who

25  interviewed him in connection with the grievance, said "that if the plaintiff withdraw he's [sic]

26  staff complaint against Officer Tuffin he would have him transferred.  The plaintiff withdrew on

1   5.25.03." Am. Compl. ¶ 25.  Defendants have not presented any evidence to rebut plaintiff's

2   claim.

3           Several courts have held that officials' actions may render a prison grievance

4   system unavailable for exhaustion purposes.  In Kaba v. Stepp, 458 F.3d 678, 682-83 (7th Cir.

5   2006), the inmate alleged he did not pursue the Bureau of Prisons' grievance procedure because

6   he had not been given the necessary grievance forms and because he had been threatened by a

7   particular prison guard.  The court recognized that

8           when the prisoner causes the unavailability of the grievance
            process by simply not filing a grievance in a timely manner, the
9           process is not unavailable but rather forfeited.  On the other hand,
            when prison officials prevent inmates from using the
10          administrative process . . ., the process that exists on paper
            becomes unavailable in reality.

11

12  Id. at 684.  The Court of Appeals remanded the case to the district court to resolve the factual

13  disputes created by the inmate's and the prison's evidence on the availability of the grievance

14  procedure.

15          In Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004), the Court of Appeals

16  recognized that "in some circumstances, the behavior of the defendants may render

17  administrative remedies unavailable.  To the extent that the plaintiff lacked 'available' remedies

18  the PLRA's exhaustion requirement is inapplicable."  In that case, plaintiff alleged that guards

19  threatened him in order to dissuade him from filing a grievance about earlier mistreatment.  Id. at

20  684.  The court continued:

21          The test for deciding whether the ordinary grievance procedures
            were available must be an objective one: that is, would a "similarly
22          situated individual of ordinary firmness" have deemed them
            available.

23

24  Id. at 688.  It remanded the case to the district court for a determination "whether some

25  seemingly available remedies were rendered unavailable by the threats Hemphill received . . . ."

26  Id.; see also Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (grievance procedure not

1 available when inmate was told he did not have the right to appeal an adverse decision); Miller v.

2 Norris, 247 F.3d 736 (8th Cir. 2001) (grievance process not available when officials refused to

3 provide grievance forms); Brown v. Croak, 312 F.3d 109, 111-12 (3d Cir. 2002) (grievance

4 process not available when prisoner was told to wait until conclusion of investigation and then

5 was not informed when it was completed).

6          In this case, plaintiff has alleged he withdrew this grievance only because

7 Lieutenant Myers promised to have him transferred if he did so.  Already concerned about his

8 safety, plaintiff was offered a quid pro quo: drop the grievance/staff complaint in order to secure

9 a safer placement.  Practically speaking, this offer took the grievance outside the established

10 procedures and rendered the grievance process unavailable.

11          This conclusion is bolstered by plaintiff's actions after he was returned to

12 segregation instead of being transferred.  First, he attempted to revive grievance 03-1024 by

13 seeking a second level review on August 7, 2003.  Am. Compl., Ex. E at 40.  Second, he filed

14 additional grievances on September 23, 2003, complaining about the assault and about the

15 propriety of housing him at HDSP; in one, he specifically complained that he dropped his earlier

16 grievance because of the promised transfer.  Opp'n, Ex. G at 24, 25, 27; Am. Compl., Ex. N at

17 17, 21.  These grievances were rejected as untimely.  Under these circumstances, then,

18 administrative remedies were rendered unavailable for plaintiff's claim against defendant Tuffin.

19                    3.  Inappropriate Housing At HDSP

20          N. Grannis avers that the Inmate Appeals Branch has not accepted an appeal from

21 plaintiff alleging that, because he is transgendered, he was inappropriately housed at HDSP.

22 Grannis Am. Decl. ¶ 12.  The printout of plaintiff's appeals shows that only one appeal

23 concerning living conditions was accepted at HDSP, but that was from 2005 and was cancelled.

24 Grannis Am. Decl., Ex. A.  In addition, three others about living conditions at HDSP from 2004

25 and 2005 were screened out.

26 /////

1    Plaintiff suggests he exhausted administrative remedies on this claim through his

2  pursuit of several grievances, many of which were screened out for "frivolous reasons" as he

3  describes them.   The court finds that plaintiff pursued this issue in grievance 04-516 and that

4  when it was improperly screened out at the Director's Level, remedies were no longer available

5  to him.

6    The grievance assigned Log No. 04-516 addresses plaintiff's dissatisfaction with

7  the ICC's decision to retain him at HDSP and again addresses the propriety of housing him at

8  HDSP.  Am. Compl., Ex. N at 17.  This grievance was signed on February 25, 2004 and

9  challenges the ICC's decision of December 11, 2003.  Even though the grievance was not timely

10  under the applicable regulations, plaintiff received a Second Level response.[3]  15 Cal. Code

11  Regs. § 3084.6(f).  The appeal was screened out as untimely at the Director's Level.  This

12  determination of untimeliness is puzzling: if the Second Level response was issued on April 15

13  and if the Inmate Appeals Branch received the appeal on April 26, then the appeal was submitted

14  within fifteen working days of the immediately preceding decision.  It appears, thus, that the IAB

15  considered the initial, underlying grievance untimely and thus refused to address the appeal from

16  the Second Level decision.

17    Nothing in the regulations, however, suggests that this was an appropriate

18  resolution: defendants have pointed to nothing that allows a reviewer at the Director's Level to

19  make a retroactive finding that the grievance was untimely at some lower level and thus reject an

20  otherwise timely appeal from a Second Level review.  The language of section 3084.6 (c)

21  suggests otherwise: "An appellant must submit the appeal within 15 working days of the event or

22  decision being appealed, or of receiving an unacceptable lower level appeal decision."

23

24    [3]  The informal and first levels were bypassed.  See 15 Cal. Code Regs. § 3085.3(c).
Additionally, the regulations give an appeals coordinator the ability to reject a grievance for
25  untimeliness, but do not require rejection, indicating a coordinator may exercise discretion in
determining whether to accept a late grievance.  15 Cal. Code Regs. § 3084.3(c) ("An appeal may
26  be rejected for the following reasons. . ." (emphasis added)).

1   Moreover, the second level resolution included the following language: "The inmate is advised

2   that this issue may be submitted for a Director's Level of Review if desired."  Am. Compl., Ex.

3   N at 20.   When the appeal was thereafter rejected at the Director's Level, there do not appear to

4   have been other available remedies for plaintiff to pursue.

5             On this record, the court finds that defendants have not borne their burden of

6   proving plaintiff's failure to exhaust available remedies.

7             III.  Other Matters

8             On March 17, 2008, plaintiff was granted thirty days in which to return the

9   documents necessary to effect service on defendant Woodford.  The thirty day period has expired

10  and plaintiff has not complied.  The action should be dismissed as to defendant Woodford for

11  lack of prosecution.

12            IT IS HEREBY RECOMMENDED that:

13            1.  The action be dismissed as to defendant Woodford because of plaintiff's

14  failure to prosecute.  Fed. R. Civ. P. 41(b); and

15            2.  The motion to dismiss (docket no. 43) be denied as to the claim that defendant

16  Tuffin opened plaintiff's cell door, leading to an assault and as to the claim defendants Runnels

17  and Felker failed to provide appropriate housing for him, but granted as to the claim that the

18  defendants conspired to cover-up staff misconduct.

19            These findings and recommendations are submitted to the United States District

20  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

21  days after being served with these findings and recommendations, any party may file written

22  objections with the court and serve a copy on all parties.  Such a document should be captioned

23  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

24  /////

25  /////

26  /////

1   shall be served and filed within ten days after service of the objections.  The parties are advised

2   that failure to file objections within the specified time may waive the right to appeal the District

3   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

4   DATED:  August 29, 2008.

5

6

7                                                    U.S. MAGISTRATE JUDGE

8

9

10   payn1868.57

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26